# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50266 | **DATE** | 9/17/2002 |
| **CASE TITLE** | BODIE vs. ACCENTURE, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  As stated on the attached order, NMR and Defendants' motion for a protective order is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | SEP 18 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 SEP 18 PM 2:01 | 9/17/2002 date mailed notice |
| LW courtroom deputy's initials | | Date/time received in central Clerk's Office | LW mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| MELANIE BODIE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 50266 |
| | ) | |
| v. | ) | Philip G. Reinhard |
| | ) | P. Michael Mahoney |
| ACCENTURE LLP, | ) | |
| | ) | No.: 01-CV-2624 (PJM) |
| and | ) | U.S.D.C. of Maryland |
| | ) | Southern Division |
| AETNA LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On May 23, 2002, Plaintiff served four subpoenas on third parties: the records custodian of Network Medical Review Company (NMR), located in Rockford, Illinois; Dr. Robert Slack, M.D., an employee of NMR; Marvin Podd, PhD, an employee of NMR; and on NMR pursuant to Rule 30(b)(6). In addition to requesting the deposition testimony of Dr. Slack, Dr. Podd, and a 30(b)(6) witness, Plaintiff requested the production of numerous records from NMR and the doctors, including NMR's business records and the files of any and all patients reviewed by Dr. Slack and Dr. Podd. Defendant, NMR, and Drs. Podd and Slack object to the production of the documents requested and the testimony of the witnesses requested by Plaintiff and seek a protective order barring Plaintiff from conducting discovery beyond her specific claim. As an initial matter, Defendants assert standing to seek a protective order based upon the fact that Plaintiff has sought

confidential medical information that was provided to NMR by Aetna. This court does not believe that Aetna has a sufficient interest to assert its standing with regards to the subpoenas at issue. However, this court need not address the issue of whether the interest is sufficient because, as stated below, NMR and Drs. Slack and Podd's motion for a protective order is granted as to the medical records of individuals other than Plaintiff. Also, because the motion for a protective order and its accompanying memoranda were filed on behalf of NMR and Drs. Slack and Podd as well as Defendants, this court is able to address the issues raised by those third parties at whom the subpoenas were directed. The motion will be referred to in this Order as Defendants' motion.

## Backgound

Plaintiff's claim arises under the Employee Retirement Income Security Act (ERISA) and Plaintiff alleges that her claim for long-term disability (LTD) benefits was wrongfully denied by Defendants, Aetna Life Insurance Company and her employer, Accenture, LLP. (NMR's Memorandum at 2, filed 7/3/2002). NMR's relationship to Plaintiff's claim is that NMR was engaged by Aetna to conduct independent examinations and reviews of benefit claims. Apparently, Plaintiff's file was reviewed by Drs. Podd and Slack who then reported to Aetna. Plaintiff claims that Aetna relied on the reports of NMR and it agents when it terminated Plaintiff's LTD benefits in December 2000. (Plaintiff's Memorandum at 2, filed 7/16/2002).

Defendants assert that Plaintiff's subpoenas are overly broad and burdensome and seek information not properly discoverable in an ERISA claim. Defendants state that while Plaintiff may legitimately inquire as to payments to NMR and Drs. Slack and Podd, Plaintiff is not entitled to NMR's marketing and financial information or information regarding other files reviewed by NMR.

Further, Defendants claim that under the abuse of discretion standard that is applicable to ERISA claims where the fiduciary has discretion to interpret the plan provisions, Plaintiff is not entitled to information outside of the administrative records. Therefore, Plaintiff is entitled only to those records before Aetna when it made its decision to deny Plaintiff's claim for benefits. Defendants assert that the Fourth Circuit's recent decisions indicating that a sliding scale is used to determine how much deference is due to the fiduciary's decision does not change the standard of review.

## Analysis

The decisions of ERISA plan administrators are reviewed de novo unless the plan provides the administrator with discretionary authority to interpret the terms or make coverage determinations, then the standard of review applied by the courts is abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), *Webster v. Black and Decker, Inc.*, 2002 U.S. App. LEXIS 6574, Docket No. 01-1945 at * 9 (4th Cir. April 10, 2002). However, in cases where the administrator is operating under a conflict of interest, where the administrator of the plan has a financial interest in the final determination, the Fourth Circuit has stated that less deference will be given to the administrator's decision. In *Ellis v. Metropolitan Life Insurance Co.*, the Fourth Circuit stated "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." 126 F.3d 228, 233 (4th Cir. 1997). The Fourth Circuit cites to the Supreme Court's decision in *Firestone* which stated that the fiduciary's conflict of interest must be weighed as a factor in determining if there was an abuse of discretion. *Bedrick v. Travelers Insurance Co.*, 93

F.3d 149, 152 (4th Cir. 1996) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). In *Bedrick*, the Fourth Circuit clarified that the existence of a conflict does not change the standard applied to the review of the administrator's decision. The decision will still be entitled to deference "but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Id.* (citing *Bailey v. Blue Cross and Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir. 1995)). In *Booth v. Wal-Mart Stores, Inc.*, the Fourth Circuit listed the factors to be considered in determining whether an administrator's exercise of discretion is reasonable, including: whether the decision is consistent with the goals of the plan, whether the decision might render language meaningless or inconsistent, whether the interpretation is at odds with the requirements of ERISA, whether the provisions have been applied consistently, whether the interpretation is contrary to the clear language of the plan, the scope of discretion conferred, the purpose of the provision in which the discretion is granted, any external standard relevant to the exercise of discretion, the administrator's motives, and any conflict under which the administrator operates. 201 F. 3d 335, 342 (4th Cir. 2000).

Plaintiff asserts that even under the most deferential abuse of discretion standard, the documents sought are relevant under the multi-factor tests used to determine if the administrator has abused his discretion. (Plaintiff's Supplemental Memorandum at 1, filed 7/24/2002). Plaintiff claims that the documents sought are relevant to her assertion that Aetna used NMR to create "plausible deniability," claiming that a full and fair review of Plaintiff's file was conducted by hiring an outside paper review company. (Plaintiff's Supplemental Memorandum at 4, filed 7/24/2002). Plaintiff asserts that NMR's reviews are not impartial, but are calculated to reduce Aetna's costs by increasing it's denial rates. (Plaintiff's Memorandum at 3, filed 7/16/2002). Further, Plaintiff seeks

evidence of the workload of Drs. Podd and Slack in order to demonstrate that the review of Plaintiff's claim could not have been adequate. (Plaintiff's Supplemental Memorandum at 3, filed 7/24/2002). Plaintiff states that she has learned that Dr. Slack performs about a thousand file reviews a year for NMR and that such evidence is relevant to the issue of whether or not Plaintiff received a full and fair review. (Plaintiff's Supplemental Memorandum at 3, filed 7/24/2002).

This court has determined, after a review of the parties' submissions and the relevant cases, that Plaintiff is entitled to some of the discovery she seeks through her May 23, 2002, subpoenas. The Fourth Circuit has ruled that a sliding scale is used to determine the deference due a plan administrator operating under a conflict of interest. Also, in *Booth*, while delineating the factors to be considered in determining whether a fiduciary's decision is reasonable, the Fourth Circuit stated "Another important factor is furnished by the Restatement, which notes that the integrity of the fiduciary's decision making process may also be considered." *Booth* at 342. Much of the discovery sought by Plaintiff directly addresses the conflict issue and the integrity of the fiduciary's decision making process and, therefore, is relevant to Plaintiff's claims that Defendants wrongfully terminated her LTD benefits.

Plaintiff seeks evidence that the medical reports provided by NMR were biased due to the nature of the financial arrangements between Defendants and NMR. Accordingly, Plaintiff seeks from NMR: (1) documents referring to Plaintiff or her claim; (2) documents referring or relating to the relationship between NMR and Aetna; (3) documents containing information related to the financial arrangements between NMR and Aetna; (4) all documents relating to policies, guidance, instructions, requests, or guidelines from Aetna to NMR; (5) every document related to the disability claims or appeals handled by NMR for Aetna since the inception of the relationship; (6)

any documents in which NMR claimed or represented to any insurance company that it can save the company money or achieve a financial advantage; (7) all disability claims reviews or reports prepared by Dr. Podd since January 1, 1997; and (8) all disability claims reviews or reports prepared by Dr. Slack since January 1, 1997. (NMR's Memorandum, Exhibit 2, filed 7/3/2002). As to Drs. Podd and Slack, Plaintiff repeated requests 1-6 above, and also requested each and every document reviewed or relied upon by the doctors in preparing their reports. (NMR's Memorandum, Exhibit 1, filed 7/3/2002). Finally, in her 30(b)(6) subpoena, Plaintiff requested that the designee bring supporting documentation to address the following issues: NMR's policies and guidance for reviewing claims; any difference in NMR's policies for reviewing claims governed by ERISA and those governed by state law; NMR's financial relationship with Aetna; NMR's fees, billings and revenue from Aetna; NMR's business model for services related to disability claims; statistical and aggregate information on the disability claims handled or processed by NMR for Aetna since January 1, 1997; statistical and aggregate information on the disability claims handled or processed by NMR for all long term disability claims from January 1, 1997; the difference in the manner claims governed by ERISA are handled for Aetna and the manner in which claims governed by state law are handled by NMR for Aetna; all disability claims reviewed by Drs. Slack and Podd; all communications, training, documents referring to how a court or courts have viewed denials of coverage; and communications since January 1, 1990, regarding Supreme Court decisions affecting disability coverage decisions. (NMR's Memorandum, Exhibit 1, filed 7/3/2002). While some of these documents are relevant and should be produced, others are either irrelevant or their production would unduly burden NMR.

Documents referring to Plaintiff or her disability claim, or relied upon or reviewed in regard

-6-

to Plaintiff's disability claim, and maintained or controlled by NMR or Drs. Podd and Slack, are relevant to Plaintiff's claims and NMR and the doctors have not demonstrated that their production will be unduly burdensome. Similarly, documents relating to the relationship between NMR and Aetna, including Aetna's instructions and guidelines sent to NMR, and their financial arrangements, are relevant and NMR and Drs. Podd and Slack will not be unduly burdened if required to produce them, to the extent that they have custody and control of the documents. NMR's motion for a protective order is denied as to those requests. Plaintiff's subsequent requests then become broader. Plaintiff seeks every document relating to the disability claims or appeals handled by NMR for Aetna since the inception of their relationship, including summaries, analyses and reports, bills, statements, adjustments, discounts, and communications for specific claims. This court finds that Plaintiff's request is overly broad and would unduly burden NMR and Drs. Podd and Slack. NMR's motion for a protective order is granted as to this request. Plaintiff also seeks any documents in which NMR claims or represents, to any insurance company, that it can save the company money or achieve a financial advantage. In accordance with the above findings, this court finds that documents that were given to Aetna, or that Aetna had access to, regarding NMR's representations, are relevant. NMR's representation to Aetna are relevant to Plaintiff's claims that Aetna's reliance on NMR's reports did not constitute a full and fair review. However, NMR's representations to other insurers are not relevant. NMR's motion for a protective order is granted in part as to other insurance companies.

From NMR, Plaintiff also seeks all disability claims reviews or reports prepared by Drs. Podd and Slack since January 1, 1997. Defendants assert that producing these files would be unduly burdensome. (Defendants' Brief at 4, filed 7/24/2002). Defendants assert that NMR's

records are kept in paper files and are stored in another building and are maintained by patient and year. (Defendants' Brief at 4-5, filed 7/24/2002). Rule 26 provides that discovery may be limited when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P 26(b)(2)(iii). The likely benefit of the discovery here is outweighed by the burden involved in producing it. In order to comply with Plaintiff's subpoena, NMR would have to pull the doctors' billing records to determine the names of the patients referred by Aetna, they would then have to locate the five years worth of files, and those files would have to be copied and the confidential information redacted. Therefore, NMR's motion for a protective order is granted as to this request.

Finally as to the documents requested in Plaintiff's 30(b)(6) subpoena, many of those have been addressed above. Plaintiff seeks documents relating to NMR's policies and guidance for reviewing claims and NMR's financial relationship with Aetna. As stated above, these documents are relevant to Plaintiff's claims and NMR's motion for a protective order is denied as to those documents. Plaintiff also seeks documentation regarding any difference in NMR's policies for reviewing claims governed by ERISA and those governed by state law and specifically whether the claims handled by NMR for Aetna are handled differently according to whether they are governed by ERISA or by state law. Further, Plaintiff seeks documentation relating to Aetna's training policies. Plaintiff asserts that Aetna has engaged in disparate claims investigation procedures that are skewed towards denial of benefits in ERISA cases while claims governed by state law receive a more complete investigation. (Plaintiff's Memorandum at 11, filed 7/16/2002). According to

Plaintiff, Aetna takes advantage of the differences in damages awarded under state and federal law to minimize its liability. (Second Amended Complaint at ¶44). While Aetna's training policies may be relevant, NMR's 30(b)(6) representative is not a likely source for this information. It seems odd that NMR would be able to produce a 30(b)(6) witness on Aetna's policies. If NMR has someone that fits the description they'll have to produce them. Plaintiff's subpoena seeks NMR's internal training policies but those documents are not relevant to her claims. As stated above, Plaintiff is entitled to information regarding representations made by NMR to Aetna; however, NMR's internal policies are not relevant to whether Aetna engaged in a full and fair review of Plaintiff's claim. Lastly, Plaintiff seeks statistical and aggregate information on the disability claims and LTD claims handled by NMR, generally and for Aetna specifically, since January 1, 1997. The information regarding NMR's statistics for the claims it has processed for insurers other than Aetna are not relevant to Plaintiff's claims. As to the claims handled by NMR for Aetna, statistics as to whether NMR has approved or disapproved the claims are relevant to Plaintiff's claims that NMR was motivated to disapprove claims submitted for review and that Aetna knew of the bias. Further, NMR and Defendants have not sufficiently demonstrated that providing such information would be unduly burdensome. However, Plaintiff's claims involve NMR and Aetna's actions in 2000. Therefore, Plaintiff's request for the information from January 1, 1997, forward is overly broad. NMR's motion for a protective order is granted as to it's statistical information prior to January 1, 1998, and as to information regarding insurers other than Aetna.

## Conclusion

As stated above, NMR and Defendants' motion for a protective order is granted in part and denied in part.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 9/18/02